AIC MANAGEMENT, Petitioner,

v.

Rhonda S. CREWS, Curtis Caldwell Crews, Annette Crews, Denise Claudeen Crews, and Claude Crews, Jr., The Heirs of Emma Crews, Valda Crews, and Eva Fay Gross, and Aldine Independent School District, Respondents.

No. 05–0270.

Supreme Court of Texas.

Argued Jan. 23, 2007.

Decided Jan. 25, 2008.

Rehearing Denied March 28, 2008.

Tracy J. Willi, Willi Law Firm, P.C., Austin Jerry L. Schutza, Law Office of Jerry L. Schutza, Houston TX, for Petitioner.

Pamela H. Walters, Aldine Independent School District, Geoffrey W. Hutson, Houston TX, for Respondents.

Justice O'NEILL delivered the opinion of the Court.

In this condemnation proceeding, we must decide whether property descriptions in a series of quitclaim deeds transferred through constable's sales were insufficient as a matter of law to identify the lands to be conveyed, and whether the trial court, a county civil court at law in Harris County, had jurisdiction to decide the issue. We hold that, pursuant to section 25.1032(c)(1) of the Texas Government Code, the county court had jurisdiction to decide issues of title arising out of the condemnation suit irrespective of the amount in controversy. We further hold that the property descriptions' adequacy to permit location of the land conveyed cannot be conclusively determined on this record, and therefore summary judgment voiding the conveyances was improper. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. Background

The parcel of land at the center of this dispute was originally part of a single, jointly owned, 24.36–acre tract described by metes and bounds and located in "the T.S. Roberts Survey, Abstract No. 659, Harris County, Texas." In 1984, the tract was partitioned into two smaller tracts. Tract One, the 8.51–acre tract at issue in this case, was conveyed to Emma Crews, Valda Crews, and Eva Fay Gross (collectively "the Crewses"). Tract Two, comprising the remaining 15.85 acres, was conveyed to Andrew C. Brown.[1] An exhibit to the partition deed described the Crewses'

---

1. Ownership of the 15.85–acre portion of the original tract was adjudicated in a separate suit and is not at issue in this appeal. *See AIC* *Mgmt. v. Baker*, 2003 WL 22724629 (Tex.App.-Houston [1st Dist.] 2003, pet. denied).

property by metes and bounds within "the T.S. Roberts Survey, Abstract No. 659, Harris County, Texas."

In March 1989, the City of Houston sued the Crewses for unpaid ad valorem taxes for the years 1960 to 1989 on what the City described as a six-acre portion of the 8.51–acre tract.[2] Harris County was joined as a party to the tax suit, but Aldine Independent School District, the other local taxing authority, was not. The tax-suit petition described the assessed property as follows:

> Tract 12 being 6.0 acres out of T.S. Roberts Survey Abstract 659 situated in Harris County, Texas, as shown in file number J659372 of the deed and plat records of Harris County, Texas.

The file number corresponded to the Harris County clerk's file number for the partition deed. The final judgment in the tax suit does not reference the partition deed, but orders the City and County to recover against the Crewses for taxes and other fees levied on "TR 12 AB 659 T.S. Roberts situated in Harris County," and further orders the constable to seize and sell the property to satisfy the judgment.

Following the tax judgment, the constable attempted to sell the property at public auction. When there were no bidders, the City acquired the property through a constable's deed in 1991. The constable's deed references the tax suit and resulting judgment by cause number, and describes the property being conveyed as follows:

> all of the estate, right, title and interest which the said Emma Crews, Valda Crews, and Eva Fay Gross had on the 5th day of February, 1991, or at any time afterwards, in and to the following land and premises, as described in said order of sale, viz:

TR 12 AB 659 T S Roberts * situated in Harris County, Texas

AIC Management purchased the land from the City at a subsequent public sale in 1997. The 1997 constable's deed also references the tax suit and judgment and describes the property being conveyed to AIC as "all of the state [sic], right, title and interest" in "TR 12 AB 659 T S Roberts* situated in Harris County" that the City had acquired under the 1991 constable's deed.

About three years after AIC acquired the land, the City decided to expand George Bush Intercontinental Airport and filed a condemnation suit on the entire 24.36–acre tract. In the multi-party condemnation proceedings that followed, both the Crewses and AIC claimed ownership of the 8.51–acre tract. The Crewses moved for summary judgment, contending they still held title under the 1984 partition deed because the property descriptions in both subsequent constable's deeds were too vague to allow the property to be located on the ground and were thus insufficient to convey title. Aldine intervened to collect delinquent taxes on the property out of the condemnation proceeds, claiming it still held a superior tax lien because it was not made a party to the City's 1989 tax suit. AIC cross-claimed against Aldine, contending it had no liability for taxes that accrued prior to its acquisition of the property and that Aldine's lien was extinguished when it failed to join the 1989 suit.

The trial court granted the Crewses' motion for summary judgment, voided the constable's deeds for insufficient property descriptions, and declared the Crewses the property's sole owners. The court also

---

**2.** The City based its tax suit on delinquent tax records that describe the property as "TR 12 AB 659 T S Roberts" in the amount of six acres (from 1968 to 1989) and three acres (from 1960 to 1967).

granted summary judgment in Aldine's favor and dismissed AIC's cross-claim because AIC had no interest in the property. The court of appeals affirmed, holding that the Crewses held superior title under the 1984 partition deed because the constable's deeds contained insufficient descriptions to allow location of the property with reasonable certainty and therefore failed to convey title. 2005 WL 267667. We granted AIC's petition for review to consider the sufficiency of the property descriptions contained in the constable's deeds and the county court's jurisdiction to decide the issue.

## II. Jurisdiction

AIC contests the jurisdiction of the trial court, a county civil court at law in Harris County, to resolve what it characterizes as a title dispute. We consider this point first.

█ AIC's argument concerns the interplay between the amount-in-controversy limitations of the general jurisdictional grant to statutory county courts,[3] Tex. Gov't Code § 25.0003, the exclusive jurisdictional grant to district courts for disputes involving title issues, Tex. Prop.Code § 21.002, and a more specific jurisdictional grant to statutory county courts in Harris County, Tex. Gov't Code § 25.1032. Generally, the subject-matter jurisdiction of statutory county courts is limited to "cases in which the matter in controversy exceeds $500 but does not exceed $100,000." *Id.* § 25.0003(c)(1). Without reference to amounts in controversy, the Texas Property Code requires a county court at law before which an eminent-domain proceeding is pending to transfer the case to the

district court upon determining that the controversy involves "an issue of title." Tex. Prop.Code § 21.002. Finally, section 25.1032 of the Government Code contains, in pertinent part, the following specific jurisdictional grant to Harris County civil courts at law:

> (a) A county civil court at law in Harris County has jurisdiction over all civil matters and causes, original and appellate, prescribed by law for county courts . . .
>
> (c) A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy. In addition to other jurisdiction provided by law, a county civil court at law has jurisdiction to:
>
> > (1) decide the issue of title to real or personal property

* * *

Tex. Gov't Code § 25.1032.

Under section 25.1032's plain language, the county civil courts at law in Harris County have exclusive jurisdiction over eminent-domain proceedings and may decide issues of title to real property. AIC contends, however, that this specific jurisdictional grant does not extend to title disputes which exceed the maximum $100,000 jurisdictional limit for statutory county courts. Because the property at issue in this case exceeds $100,000 in value, AIC contends, section 21.002 of the Property Code divested the county court of jurisdiction and required transfer of the case to the district court. We disagree.

The $100,000 cap on county court jurisdiction appears in chapter 25 of the Gov-

---

**3.** A "statutory county court" is defined as "a county court created by the legislature under Article V, Section 1 of the Texas Constitution, including county courts at law, county criminal courts, county criminal courts of appeals, and county civil courts at law, but does not include statutory probate courts as defined by Section 3, Texas Probate Code." Tex. Gov't Code § 21.009(2).

ernment Code under subchapter A, entitled "General Provisions." *Id.* § 25.0003(c). The first section of that subchapter states that, "[i]f a provision of this subchapter conflicts with a specific provision for a particular court or county, the specific provision controls." *Id.* § 25.0001(a). Section 25.1032, which appears in subchapter C, defines the specific jurisdiction of county civil courts at law in Harris County. *Id.* § 25.1032. That section vests exclusive jurisdiction over eminent-domain proceedings in Harris County in the county civil courts at law. *Id.* § 25.1032(c). Subsection (1) also grants those courts jurisdiction to decide the issue of title to real property, which section 25.1032(c) provides is "in addition to other jurisdiction provided by law." *Id.* Section 25.1032(c)(1) thus bases the county civil courts' jurisdiction on the type of claim, not the amount of money in dispute. *See Haas v. Ashford Hollow Cmty. Improvement Ass'n,* 209 S.W.3d 875, 880 (Tex. App.-Houston [14th Dist.] 2006, no pet.); *see also Taub v. Aquila Sw. Pipeline Corp.,* 93 S.W.3d 451, 458 (Tex.App.Houston [14th Dist.] 2002, no pet.); *In re Burlington N. & Santa Fe Ry. Co.,* 12 S.W.3d 891, 899 (Tex.App.-Houston [14th Dist.] 2000, no pet.). We conclude that, in Harris County, the county civil courts' jurisdiction to decide issues of title arising out of condemnation proceedings is in addition to their general concurrent jurisdiction described in section 25.0003(c) and is not dependent upon the amount in controversy.

AIC cites our decision in *City of Houston v. West,* 520 S.W.2d 752 (Tex.1975), to support its contention that the county court lacked jurisdiction to decide issues of title in this case. In *West,* which involved an eminent-domain proceeding, we held that an issue of title was involved that required transfer to the district court for resolution. *Id.* at 754. Our decision,

though, preceded the Legislature's specific jurisdictional grant to county civil courts at law in Harris County over eminent-domain and title issues, Tex. Gov't Code § 25.1032(c). Accordingly, our decision in *West* has no application here.

In interpreting statutes, we examine the language the Legislature chose and may also consider the object sought to be obtained. *See id.* § 311.023(1). The legislative history indicates that section 25.1032, which vested exclusive jurisdiction over eminent-domain proceedings in Harris County in the county civil courts, was originally enacted to alleviate a caseload imbalance between underutilized county courts and overburdened district courts in Harris County. House Comm. on Judicial Affairs, Bill Analysis, Tex. H.B. 1110, 69th Leg., R.S. (1985). The statute was subsequently amended to "raise the amount in controversy limit ... and expand [county courts'] jurisdiction with respect to other causes of action," again due to the heavy pending caseload in the Harris County district courts and the availability of speedier resolution in the county courts. *See* Act of May 15, 1989, 71st Leg., R.S., ch. 445, § 1, 1989 Tex. Gen. Laws 1605, 1606; Tex. Gov't Code Ann. § 25.1032, Historical and Statutory Notes; Tex. Sen. Jurisprudence Comm., Bill Analysis, Tex. H.B. 1795, 71st Leg., R.S. (1989). The statutory language vesting jurisdiction in the county courts based on the type of claim rather than the amount in controversy is consistent with this purpose. We conclude that the county court at law had subject-matter jurisdiction to resolve any title dispute between AIC and the Crewses arising out of the City's eminent-domain proceeding, and now turn to the deeds themselves.

### III. The Constable's Deeds

Before examining the particular conveyances presented, we first consider

the standard by which the sufficiency of their property descriptions should be measured. To be valid, a conveyance of real property must contain a sufficient description of the property to be conveyed. A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *See Broaddus v. Grout,* 152 Tex. 398, 258 S.W.2d 308, 309 (Tex.1953); *see also Pickett v. Bishop,* 148 Tex. 207, 223 S.W.2d 222, 224 (Tex.1949); *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703, 705 (Tex.1935). Like any other conveyance of property, a judgment for foreclosure of a tax lien upon real estate which fails to describe a definite tract of land is void. *See Arnold v. Crockett Indep. Sch. Dist.,* 404 S.W.2d 27, 28 (Tex.1966). A tax judgment's property description must be sufficiently particular to allow a party to locate the specific land being identified. *See Manges v. Freer Indep. Sch. Dist.,* 728 S.W.2d 842, 843 (Tex.App.-San Antonio 1987, writ ref'd n.r.e.).

 In this case, the court of appeals held that a heightened standard applies when gauging the sufficiency of property descriptions contained in constables' or sheriffs' deeds made by virtue of execution sales. 2005 WL 267667. However, that distinction has not been the law in Texas for more than a century. *See Hermann v. Likens,* 90 Tex. 448, 39 S.W. 282, 284 (Tex.1897) (stating "there should be no distinction in this respect between voluntary and involuntary conveyances"); *Gallup v. Flood,* 46 Tex.Civ.App. 644, 103 S.W. 426, 427 (Tex.Civ.App.1907, writ ref'd) (holding that a more definite description of the property is not required for the efficacy of a sheriff's deed as compared to a voluntary deed). Texas law does not require courts to scrutinize the proceedings

of a judicial sale with a view to defeat them; instead, "every reasonable intendment will be made in their favor, so as to secure, if it can be done consistent with legal rules, the object they were intended to accomplish." *Hermann,* 39 S.W. at 284 (quoting *White v. Luning,* 93 U.S. (Otto) 514, 523, 23 L.Ed. 938 (1876)). Both voluntary and involuntary conveyances of land require a property description that would allow an individual to locate the conveyed property with reasonable certainty. We now turn to the property descriptions in issue.

The property in dispute is identified as "TR 12" in the 1991 and 1997 constable's deeds, and as "Tract 12 being 6.0 acres" in the tax-suit petition. The "Tract 12" description is a reference to the numbered "tax tracts" the Harris County Appraisal District ("HCAD") uses to divide property for tax purposes. AIC contends this property description is adequate because, under Texas law, deeds that convey all of a party's interest in a particular tract, abstract, survey, county, and state are sufficient as a matter of law. According to AIC, the constable's deeds contain only one unambiguous property description conveying all of the Crewses' ownership interest in the entire 8.51–acre tract, or at a minimum six acres of it. The Crewses, on the other hand, contend the tax judgment and subsequent deeds were insufficient to convey title because they lack adequate descriptors, such as metes and bounds, that would allow a person to locate the six-acre portion of the 8.51–acre tract upon which the City of Houston foreclosed its tax lien. Although we agree with the Crewses that the constable's deeds are not a model of clarity, we cannot conclude based on the record presented that they are void as a matter of law.

The confusion apparently stems from the HCAD's subdivision of the original

24.36–acre tract for appraisal and taxing purposes. HCAD maps from 1973 show that the taxing authority treated the 24.36–acre tract as 24 acres and labeled it as Tract 12. At some point not ascertainable from the record, Tract 12 was divided into eight three-acre tax tracts. A 2001 HCAD map shows those eight tracts, moving from east to west, as tax Tracts 12A, 12B, 12C, 12D, 12E, 12F, 12, and 12G, respectively. It appears from 2001 tax statements that, at some point, HCAD had assessed 12 and 12G as one six-acre tract.[4]

Another 2001 HCAD map shows the eight tax tracts with Tracts One and Two from the partition deed sketched overtop. The sketches were drawn from a land survey that was conducted in 2000 based on the metes-and-bounds descriptions in the 1984 partition deed. The map shows that Tract One spans portions of tax tracts 12, 12G, 12F, and 12E; none of the tax tracts seem to lie entirely within the 8.51–acre Tract One as sketched on the map. The record does not contain a map showing how Tract 12 was situated at the time of the tax judgment in 1989. It is possible that the maps produced in 2001 reflect what the tax tracts looked like in 1989. It is also possible that in 1989, HCAD still designated or referred to the entire 24–acre portion of land as Tract 12. Or perhaps Tract 12G did not exist as a separate tract in 1989, so Tract 12 was the six acres labeled in 2001 as Tracts 12 and 12G. Without information from HCAD about how the tax tracts were drawn in 1989, we cannot determine whether the conveyance of all the Crewses' interest in "Tract 12" was sufficient to allow identification of the property. In the past, we have considered similar descriptors to be sufficient or not

depending upon additional available information.

In *Arnold v. Crockett Independent School District,* taxpayers described separate tracts of land in rendering their property for tax purposes, but grouped several tracts together in schedules. 404 S.W.2d at 29. For a number of years, the taxing authority made assessments on the property in bulk as to all the tracts within each schedule, a method the trial court incorporated into its judgment of foreclosure. We held that the judgment for delinquent taxes on several schedules was void because, although some of the tracts within each schedule were adequately described, other tracts could not be located with sufficient certainty. *Id.* at 28. For example, some tracts of land in the same schedule were identified simply as portions of floating acreage within an abstract and survey, such as "Abstract 926, Levi Speer Survey, 4.9 acres," and "Abstract 926, Levi Speer Survey, 58 acres." *Id.* at 29 n. 1. Because the schedule contained both sufficient and insufficient property descriptions, the tax judgment was reversed with respect to the entire schedule. *Id.* at 29; *see Adams v. Duncan,* 147 Tex. 332, 215 S.W.2d 599, 603 (Tex.1948) (holding conveyance of "four hundred eighty (480) acres of land [in Jasper County] out of a 640–acre survey patented to Wm. Duncan by the Republic of Texas, Feb. 26th, A.D. 1842, Abstract No. 136, Patent No. 173, Certificate No. 348, Vol. 1" void as not describing a definite tract of land). We remanded the case to the trial court with instructions that the court "receive proof of the properties ... and describe the properties with such cer-

---

4. The 1990 tax statements refer to a six-acre portion as "TR 12" from 1968 forward and make no reference to Tract 12G. From 1960 through 1967, "TR 12" is listed as consisting of three acres. The 2001 statements refer to a six-acre property as "TRS 12 & 12G" for all relevant years, and they reflect that the value of the property exactly doubled between 1967 and 1968.

tainty in the judgment that they can be located and identified." *Id.* at 29.

In *Garza v. City of San Antonio,* the court concluded that a tax judgment was void because it contained an insufficient property description. 231 S.W. 697, 699 (Tex. Comm'n App.1921, holding approved). The tract of land at issue in *Garza* was assessed in the tax rolls for several years as a five-acre plot, but following a transfer in title the same tract of land was assessed in the tax rolls as a two-acre tract. *Id.* at 700. The tax petition, which covered delinquent taxes for both the five-acre and two-acre assessments, described the property simply as "[o]ne tract of land described as old city block No. A–6, new city block No. A–6, situated on Trueheart Street, situated within the corporate limits of the city of San Antonio, Bexar County, State of Texas." *Id.* at 698. We considered the property description in the petition sufficiently clear to identify the entire five-acre city block. But the tax judgment described the property foreclosed as "that certain tract of land fronting on Trueheart Street, within the corporate limits of the city of San Antonio, Bexar County, Tex., and situated in city block A–6, consisting of two acres of land." *Id.* Because the judgment was for only two acres, and nothing in the petition or tax assessment records or judgment indicated *which* two acres, we held that the exact property could only be identified by "inference and conjecture"; thus, the property description was insufficient to convey title. *Id.* at 700.

In *Willoughby v. Jones,* we resolved a dispute similar to the one presented here. 151 Tex. 435, 251 S.W.2d 508 (Tex.1952). The prior owners of Willoughby's land, which he purchased following a tax judgment, brought a trespass-to-try-title suit claiming that the property description in the tax judgment was insufficient to convey title. *Id.* at 509. The tax judgment described the property as three separate tracts and included the total acreage for each tract; the judgment then listed the smaller units making up each tract, but with incomplete abstract, survey, certificate and block numbers. *Id.* at 510–11. We noted that the incomplete descriptions were "of dubious validity." *Id.* at 511. However, we considered the judgment's description in light of the description in the respondents' petition, which identified the property by referencing three deeds in the property's chain of title. *Id.* Due to the close correlation between the property descriptions in the three deeds and the description in the tax judgment, we held that the property the tax judgment intended to describe was ascertainable. *Id.* at 512. Accordingly, we affirmed summary judgment in Willoughby's favor. *Id.* at 514.

The *Willoughby* decision highlights the Court's willingness to read property descriptions in tax judgments alongside the property descriptions in related petitions and judgment rolls to identify the property conveyed, thus avoiding the inequity of erasing otherwise valid tax judgments at the public's expense. At the same time, we recognize the fundamental policy underlying our decision in *Garza* that a judgment's property description must be sufficient to allow location of the particular land conveyed. *Garza,* 231 S.W. at 700.

In this case, indulging all inferences in favor of the non-movant AIC, we simply cannot tell whether the property descriptions that appear in the 1991 and 1997 constable's deeds, read in light of the 1989 tax judgment and the underlying petition, are sufficient to allow location of the property on the ground. Throughout this litigation, the record reflects confusion arising from the HCAD's division of tax tracts, which do not correspond to the division of ownership in the 1984 partition deed. The

**648**

City's tax petition identifies the Crewses as defendants claiming interest in the tax-burdened land, and then describes the land upon which delinquent taxes are due as "Tract 12 being 6.0 acres out of T.S. Roberts survey situated in Harris County, Texas, as shown in file number J659377 of the deed and plat records of Harris County, Texas." The tax judgment against the Crewses is for taxes owed on "TR 12 AB 659 T.S. Roberts situated in Harris County." What is clear is that the court in 1989 intended to convey all of the Crewses' interest in the particular tract of land identified in HCAD tax records as "Tract 12," at least part of which lay within the bounds of the Crewses' property described in the partition deed.

The Crewses, citing our decision in *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex. 1972), contend extrinsic or parol evidence may not be used to furnish the means or data by which the land to be conveyed may be identified. *Id.* at 540–41. There, the following property description was deemed insufficient because, despite the semblance of a metes-and-bounds description in the deed, a surveyor could not identify the following tract of land:

> The North acreage (to be determined by a survey) out of 145.8 acre tract of the Jefferson McGrew Survey No. 245, which acreage lies North of a line beginning at the Northeast corner of the First Tract above described and running North 75 East to a point in the West Boundary Line of Public Highway No. 277, commonly known as the Anson–Hawley–Abilene Highway, Jones County, Texas.

*Id.* at 539. Although the property could be identified with the aid of the parties, the deed itself did not refer to an existing writing but a nonexistent survey to be conducted in the future. The *Morrow* court affirmed that the essential elements of a property description may not be supplied by such extrinsic evidence; the deed must furnish within itself or by reference to some other *existing* writing the means or data by which the land to be conveyed may be identified with reasonable certainty. *Id.* at 541.

This case is easily distinguishable from *Morrow*, however, as HCAD records are not the type of extrinsic evidence we rejected in that case. The "TR 12" in the property descriptions is an explicit reference, within the four corners of the deed, to existing writings, such as tax tract maps, within HCAD records. The property description in the constable's deeds references "TR 12 AB 659 T.S. Roberts * situated in Harris County," which is a division within the HCAD tax rolls that can be used to assist a surveyor in locating the land. While the maps produced in 2001 could not locate the boundaries of Tract 12 at the time of the conveyance, if records still in existence from 1989 could identify the tract and where it overlapped the Crewses' property, the description would be sufficient.

AIC contends the property descriptions here, which convey "all of the prior owner's interest" in "TR 12 AB 659 T.S. Roberts * situated in Harris County," are sufficient as a matter of law to convey all of the Crewses' interest in the entire 8.51-acre Tract One. We have held that deeds in which the property is described as simply "my property" are sufficient when extrinsic evidence shows that the party owns only one tract of land answering the description. *See Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222, 223 (Tex.1949). In such an instance, the stated ownership of the property is itself a matter of description. *Id.; see also Sanderson v. Sanderson*, 130 Tex. 264, 109 S.W.2d 744, 746, 748 (Tex.1937) (upholding as sufficient a contract that simply described property as

"Mrs. Kelton's farm in Haskell County" so long as that evidence established that Mrs. Kelton owned only one farm in Haskell County at the time). In this case, the Crewses conveyed all of their interest in "TR 12," but the record does not demonstrate how Tract 12 was configured at the time. If the trial court were to find that in 1989 HCAD designated the entire 24–acre tract as Tract 12, we agree with AIC that it would be entitled to all of the Crewses' interest in the 8.51–acre Tract One. But if HCAD identified Tract 12 at the time of the 1989 tax judgment as something less, be it three acres, six acres, or something else, then AIC would be entitled to the part of Tract 12 that overlapped with the 8.51–acre Tract One, and the Crewses would retain whatever land remains.

The Crewses contend the tax petition's description of Tract 12 as six acres, when compared with HCAD records which have identified Tract 12 as three and six acres at different points in time, is a source of ambiguity and invalidity. But we have held that the specification of acreage is the least reliable data point in descriptions of land "and will be rejected if it is inconsistent with the actual land conveyed." *Tex. Pac. Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436, 439 (Tex.1960). Here, the constable's deeds broadly convey all of the Crewses' interest in Tract 12. If HCAD records show the 1989 version of Tract 12 clearly drawn on a map or described by metes and bounds, the less reliable references to acreage in the tax-suit petition will not render the description ambiguous or insufficient.

## IV. Other Issues Raised by AIC

AIC argues that its cross-claims against Aldine should not have been dismissed. AIC's cross-claims contend that Aldine's tax liens were extinguished when it failed

to join the 1989 tax suit, and that any taxes which accrued between 1980 and 1991 are the Crewses' responsibility. Because the trial court awarded the property to the Crewses, it dismissed AIC's cross-claims against Aldine without reaching the merits, reasoning that AIC did not have standing to bring such claims because it lacked any interest in the land. Because we reverse the summary judgment granting title to the Crewses, we also reverse the dismissal of AIC's cross-claims against Aldine and remand those claims to the trial court.

## V. Conclusion

We hold that the trial court, a county civil court at law in Harris County, had jurisdiction to decide issues of title arising out of the City's condemnation proceedings, and that the record presented does not conclusively demonstrate that the property descriptions in the constable's deeds were inadequate to convey title as a matter of law. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

Justice WILLETT filed a concurring opinion.

Justice WILLETT, concurring in the judgment.

My only quibble with the Court's decision is that it peeks unnecessarily into the legislative history surrounding the 1985 enactment and 1989 amendment of section 25.1032. I agree with the Court that section 25.1032 constitutes "the Legislature's specific jurisdictional grant to county civil courts at law in Harris County over eminent-domain and title issues." [1] But our analysis on jurisdiction should end with

1. 246 S.W.3d 644.

that declarative sentence. The statutory text is unequivocal, which makes it dispositive, which makes the tag-along paragraph examining the legislative history unnecessary.

True, in today's case, the cited history happens to be consonant with section 25.1032's unambiguous text, but it is not difficult to imagine cases where a shrewd snippet from a committee hearing or floor debate could contradict a result that the face of the statute plainly requires. Citing such background materials even to confirm the clear meaning of dispositive text suggests that the text alone is in fact not dispositive, but rather vulnerable to challenge by a stray floor-debate comment from an individual legislator or a witness testifying at a post-midnight committee hearing or a bill analysis drafted by a legislative staffer (or, just as likely, ghost-drafted by a lobbyist). The statute itself is what constitutes the law; it alone represents the Legislature's singular will, and it is perilous to equate an isolated remark or opinion with an authoritative, watertight index of the collective wishes of 181 individual legislators, who may have 181 different motives and reasons for voting the way they do.[2]

This Court recognizes that legislative intent is best embodied in legislative language. We recently cautioned that "overreliance on secondary materials should be avoided, particularly where a statute's language is clear. If the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae."[3] Faced with clear statutory language, "the judge's inquiry is at an end."[4] It may be a widespread practice to mine the minutiae of legislative records to discern what lawmakers had in mind, but as we have held, relying on these materials is verboten where the statutory text is, as here, absolutely clear.[5]

Accordingly, because the jurisdictional question can be decided without recourse to legislative history, we should decide the jurisdictional question without recourse to legislative history.

**2.** Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 HARV. J.L. & PUB. POL'Y 61, 68 (1994) ("Intent is elusive for a natural person, fictive for a collective body.").

**3.** *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n. 4 (Tex.2006).

**4.** *Id.* at 652.

**5.** *Id.* at 651–52. Justice Scalia, the foremost critic of supplementing clear statutory text with legislative history, has stated his position plainly:

As today's opinion shows, the Court's disposition is required by the text of the statute.... That being so, it is not only (as I think) improper but also quite unnecessary to seek repeated support in the words of a Senate Committee Report—which, as far as we know, not even the full committee, much less the full Senate, much much less the House, and much much much less the President who signed the bill, agreed with. Since, moreover, I have not read the entire so-called legislative history, and have no need or desire to do so, so far as I know the statements of the Senate Report may be contradicted elsewhere.

Accordingly, because the statute—the only sure expression of the will of Congress—says what the Court says it says, I join in the judgment.

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 267, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004) (Scalia, J., concurring in the judgment).